UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| Robert B. Broughton, Jr. | ) | Case No. 5:19-cv-066-S |
| and Celeste G. Broughton, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Roger Gregory, Chief Judge, 4th Circuit; | ) | **AND ORDER TO SHOW CAUSE** |
| Michelle McGirr, Court Reporter; | ) | |
| US Marshal Service Wake County NC; | ) | |
| Martin K. Reidinger, Judge, USD Court; | ) | |
| and Wells Fargo & Co., | ) | |
| | ) | |
| Defendants. | ) | |

On February 20, 2019, Plaintiffs Robert B. Broughton, Jr. and Celeste G. Broughton, proceeding pro se, filed a complaint against Defendants Roger Gregory, Michelle McGirr, the U.S. Marshal's Service, Martin K. Reidinger, and Wells Fargo & Co. ("Wells Fargo"). The case was reassigned to the undersigned on March 14, 2019. On April 16, 2019, United States Magistrate Judge Mary Gordon Baker was designated to perform judicial duties under 28 U.S.C. § 636(a), (b), and (c), as needed. This matter is before the court on Plaintiffs' failure to prosecute and comply with court orders, as well as Wells Fargo's motions to dismiss and for prefiling injunction.

A. <u>Failure to Prosecute and Failure to Comply with Court Orders</u>

On April 17, 2019, the Magistrate Judge issued an order directing plaintiffs to bring the complaint into proper form by (1) completing and filing notices of self-representation in accordance with Local Civil Rule 5.3(b); (2) completing and filing financial disclosure statements that satisfy Local Civil Rule 7.3; (3) completing and filing a civil action cover sheet; (4) either

paying the filing fee or apply to proceed in forma pauperis; (5) completing and filing one summons form for each defendant, as well as summonses addressed to the Attorney General of the United States and the United States Attorney for the Eastern District of North Carolina; and (6) completing and returning a Form USM-285 for each Defendant, as well as for the Attorney General of the United States and the United States Attorney, if proceeding in forma pauperis. Plaintiffs were cautioned that their failure to comply with the Magistrate Judge's order could subject the action to dismissal for failure to prosecute and for failure to comply with an order of the court. See Fed. R. Civ. P. 41(b). On May 21, 2019, the envelopes including a copy of the Magistrate Judge's proper form order were returned to the Office of the Clerk of Court. Affixed to the envelopes were stickers reading "NOTIFY SENDER OF NEW ADDRESS" and providing a post office box in Raleigh, North Carolina. Accordingly, the Magistrate Judge forwarded her order to Plaintiffs at the new address and extended the time for Plaintiffs to bring the case into proper form until June 13, 2019. The envelopes have not been returned to the Clerk's Office, and Plaintiffs have not responded to the order.

In Davis v. Williams, 588 F.2d 69 (4th Cir. 1978), the Court of Appeals for the Fourth Circuit addressed an appeal wherein a district court dismissed an action with prejudice under Rule 41(b). The Fourth Circuit noted that the district court, in exercising its discretion to dismiss with prejudice, must balance considerations of sound judicial administration, applying four criteria: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a "drawn out history of deliberately proceeding in a dilatory fashion"; and (4) the effectiveness of sanctions less drastic than dismissal. Davis, 588 F.2d at 70 (quoting McCargo v. Hedrick, 545 F.2d 393, 396 (4th Cir. 1976)). In this

2

case, Plaintiffs have failed to make any response to numerous notices from the court, Wells Fargo's motion to dismiss, or the Magistrate Judge's order. In fact, they have done nothing other than filing the complaint. No Defendant has been served with copies of the summons and complaint. Although Wells Fargo has appeared and filed certain motions with the court, it notes that service was not effected by Plaintiffs. ECF No. 7, 1 n.1. Rather, Wells Fargo contends that the complaint is grounded on the same theories and claims rejected by the North Carolina courts in numerous previous actions. These facts demonstrate Plaintiffs' personal responsibility, prejudice to Wells Fargo needing to again defend against claims already disposed of, and a "drawn out history of deliberately proceeding in a dilatory fashion." Given Plaintiffs' failure to prosecute the within action, when considered in conjunction with their nine-year history of frivolous and repetitious litigation, the court discerns no sanction less drastic than dismissal with prejudice.

Plaintiffs' complaint is dismissed pursuant to Rule 41(b), with prejudice.

B.   Wells Fargo's Motion to Dismiss

Wells Fargo filed a motion to dismiss and memorandum in support of the motion on April 16, 2019. Wells Fargo contends that the claims in the complaint are grounded on theories dismissed in previous actions. The Office of the Clerk of Court issued a Rule 12 letter[1] to each Plaintiff on May 24, 2019, advising each Plaintiff of Wells Fargo's motion to dismiss and the possible consequences of failing to respond. Plaintiffs filed no response in opposition to Wells Fargo's motion. Because the court has dismissed the complaint pursuant to Rule 41(b), Wells Fargo's motion to dismiss is denied as moot.

---

[1] The purpose of the letter is to provide notice to a pro se party regarding his or her obligation to respond to a motion within twenty-one days, or the case may be subject to dismissal.

C.  Motion for Prefiling Injunction

Wells Fargo seeks an injunction prohibiting Plaintiffs from filing any new action or filing in this court relating to Wells Fargo and any of the claims, theories, or circumstances relating to their previously dismissed state and federal court actions unless Plaintiffs have obtained prior authorization from a United States District Judge who has determined that the proposed filing complies with Fed. R. Civ. P. 11 and is not based on the claims theories, or circumstances underlying prior state or federal actions brought by either Plaintiff.

The All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants. Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817 (4th Cir. 2004). Such a drastic remedy must be used sparingly, however, consistent with constitutional guarantees of due process of law and access to the courts. Id. (citing U.S. Const. amend. XIV, § 1). These rights are longstanding and of fundamental importance in our legal system. "'The due process clause requires that every man shall have the protection of his day in court.'" Id. (quoting Truax v. Corrigan, 257 U.S. 312, 332 (1921)). The Supreme Court has explained that the particular constitutional protection afforded by access to the courts is "'the right conservative of all other rights, and lies at the foundation of orderly government.'" Id. (Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142, 148 (1907)). Thus, a judge should not in any way limit a litigant's access to the courts absent "'exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions.'" Id. at 817-18 (quoting Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)). Indeed, "'use of such measures against a pro se plaintiff should be approached with particular caution' and should 'remain very much the exception to the general rule of free access to the courts.'" Id. at 818 (quoting Pavilonis

v. King, 626 F.2d 1075, 1079 (1st Cir. 1980)). In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. Id. (citing cases). Such injunctions should be narrowly tailored to achieve the objective. Id.

In its motion, Wells Fargo details federal and state litigation in which either or both Plaintiffs have been engaged as follows:

### I. 2010 Federal Court Lawsuit

On June 7, 2010, Ms. Broughton filed a lawsuit in this Court against WFC [Wells Fargo Company], Wake County Chief District Court Judge Robert B. Rader, and attorneys for the Estate of Robert Broughton, Sr. (the "Estate"). *See Broughton v. Aldridge, et al.*, No. 5:10-cv-00231-FL (E.D.N.C. filed June 7, 2010) (the "First Federal Action"). Like the present case, the First Federal Action asserted claims under 42 U.S.C. § 1983 based on the theory that a judge who ruled against her on the merits conspired with WFC and others to violate her constitutional rights and to deprive her of the benefits of an alleged "contract" (which is the term Ms. Broughton incorrectly uses to describe a 1980 Order entered in North Carolina state court relating to alimony payments).

The Honorable Louise Flanagan dismissed the First Federal Action, relying primarily on the *Rooker-Feldman* doctrine, concluding that Ms. Broughton may not use this Court as a forum to appeal orders entered in North Carolina state court. *Broughton v. Aldridge*, No. 5:10-CV-231-FL, 2010 WL 4809036, at *4 (E.D.N.C. Nov. 17, 2010). The Fourth Circuit affirmed the dismissal. *Broughton v. Aldridge*, 445 Fed. App'x 656, 657 (4th Cir. 2011).

During the course of the First Federal Action—including two 2011 appeals to the Fourth Circuit that were consolidated and captioned *Broughton v. Aldridge*, No. 11-1115 (4th Cir. docketed Mar. 2, 2011) (the "2011 Appeals")—Ms. Broughton:

5

- argued, while seeking to vacate the dismissal Order, that Judge Flanagan was biased in favor of WFC (First Federal Action DE-95 at 1-3);

- later sought to disqualify Judge Flanagan, again claiming bias in favor of WFC (2011 Appeals DE-43 at 8); and

- moved to disqualify all Fourth Circuit Judges from North Carolina from considering her claims in the appeal of the First Federal Action due to alleged bias and supposed ex parte communications, claiming that Fourth Circuit Judge James A. Wynn, Jr. previously "convinced a panel of the [North Carolina Court of Appeals] to refuse even to consider a vitally important appeal" by Ms. Broughton and her sons. (2011 Appeals DE-44 at 1 & Ex. A; 2011 Appeals DE-65 at 1-4; 2011 Appeals DE-73 at 1-3).

Ms. Broughton did not succeed on any of her claims or substantive motions before this Court or the Fourth Circuit, and final judgment became effective as of October 24, 2011. (First Federal Action DE-123.)

## II.    2013 Federal Court Lawsuit

On June 24, 2013, Ms. Broughton—this time joined by Mr. Broughton, a Plaintiff in this action—filed another lawsuit against WFC and others. *See Broughton, et al. v. McClain, et al.,* No. 5:13-cv-00454-H (E.D.N.C. filed June 24, 2013) (the "Second Federal Action"). The same alleged scheme and theories from the First Federal Action formed the foundation of this Second Federal Action, though WFC's co-defendants differed in the Second Federal Action, and in addition to 42 U.S.C. § 1983 arguments asserted in the First Action, the Broughtons added causes of action for violation of Title 18 of the United States Code, noncompliance with the Sarbanes-Oxley Act, and violations of various criminal statutes. *(See generally* Second Federal Action DE-1.) Like the present case, the Second Federal Action related to attempts by the Estate to collect on state court sanctions judgments entered against Ms. Broughton, including the Estate seeking writs of execution permitting the sale of Ms. Broughton's residence at the time (i.e., the same real property at issue in the present action). *(Id.* at ¶¶ 10, 14, 30-34, 39-40.)

The Honorable Malcolm J. Howard dismissed the Broughtons' claims in the Second Federal Action pursuant to the *Rooker-Feldman* doctrine, noting that the Second Federal Action was Ms. Broughton's "second attempt to attack judgments and orders issued by the state court" in this federal Court. *Broughton v. McClain,* No. 5:13-CV-00454-H, 2014 WL 1 1497951, at *1-2 (E.D.N.C. July 22, 2014). As in the First Federal Action, the Fourth Circuit affirmed the dismissal. *Broughton v. McClain,* 587 F. App'x 81, 82 (4th Cir. 2014).

The Second Federal Action—which included four appeals to the Fourth Circuit, assigned Case Nos. 13-1855 (the "2013 Appeal"), 14-2187, 15-1045 (the "First 2015 Appeal"), and 15-1569 (the "Second 2015 Appeal")—also devolved into personal attacks by Ms. Broughton against the presiding Judges. For instance, the Broughtons:

•   moved to have the matter reassigned from Judge Flanagan, to whom the Second Federal Action was initially assigned, to a different judge, arguing that Judge Flanagan was unsuitable due to alleged conflicts of interest (Second Federal Action DE-3 at 1; Second Federal Action DE-8 at 1-2);

•   after the Broughtons' claims were dismissed, accused Judge Howard, to whom the matter was ultimately assigned, of: (1) creating "tyrannical damage" by "criminally defam[ing]" Ms. Broughton; (2) misusing his "unbridled power to despotically steal from a totally innocent Plaintiff that which is every individual's most valuable possession—her good name"; and (3) disregarding "the concept of due process of law in litigation of property rights" (Second Federal Action DE-75 at 8-9; Second Federal Action DE-74 at 1; Second 2015 Appeal DE-17 at 11-12);

•   later moved to disqualify Judge Howard and invalidate Orders entered by him based on unsubstantiated allegations of an ex parte communication and accusations that he "either did not read [the Broughtons'] complaint or read it and ignored its content" (Second Federal Action DE-107 at 1-3; First 2015 Appeal DE-15-1 at 1-3; Second 2015 Appeal DE-17 at 1, 3, 6-12); and

•   again moved to disqualify all Fourth Circuit Judges from North Carolina from hearing her appeals. (2013 Appeal DE-7 at 1-2.)

Similar to the First Federal Action, the Broughtons did not succeed on any of their claims or substantive motions before this Court or the Fourth Circuit, and final judgment became effective as of June 8, 2016. (First Federal Action DE-123.)

### III.   2015 Adversary Proceeding

While the Second Federal Action was pending, Ms. Broughton filed a bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of North Carolina, presently captioned *In re: Celeste G. Broughton,* 5:16-CV-302-RE (E.D.N.C. filed Dec. 15, 2014) (the "Base Case"). Then on May 5, 2015, Ms. Broughton filed a related adversary proceeding against WFC and others, which was captioned *Broughton v. Wells Fargo & Co., et al.,* No. 5:16-cv-00303-BO (E.D.N.C. filed May 5, 2015) (the "Adversary Proceeding").

As in the First and Second Federal Actions, Ms. Broughton again alleged an unlawful conspiracy to steal her property or deprive her of alleged rights. *(See generally* Adversary Proceeding DE-1.) And as in the First and Second Federal Actions, this Court dismissed the Adversary Proceeding with prejudice, concluding that Ms. Broughton's claims were barred by the *Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine bars federal district courts, with the exception of habeas corpus proceedings, from engaging in direct review of state court judgments. *Jordahl v. Democratic Party of Virginia,* 122 F.3d 192, 199 (4th Cir. 1997) . . . . Because each of [Ms. Broughton's] claims in the instant matter are premised on a finding that the decisions of the state court on the issues of subject matter jurisdiction, the propriety of actions by Wells Fargo counsel, and an alleged conspiracy were wrong, they are properly considered to be appeals of these issues and are appropriately barred by *Rooker-Feldman.*

(Adversary Proceeding DE-99 at 3-4.) The Order further found that Ms. Broughton's claims were barred by the doctrine of res judicata given that "this Court has on two prior occasions [i.e., the First and Second Federal Actions] found that plaintiff's complaint alleging substantially similar allegations and claims was barred by *Rooker-Feldman.*" *(Id.* at 4-5.)

Ms. Broughton did not appeal the dismissal of her Adversary Proceeding. (*See, e.g.*, Adversary Proceeding DE-114 (noting Ms. Broughton's failure to file a timely Rule 59 Motion).) She did, however, accuse a number of Judges who ruled against her in the bankruptcy proceedings of wrongdoing. By way of example, in the Adversary Proceeding and Base Case, Ms. Broughton:

- filed numerous documents seeking the disqualification of Bankruptcy Court Judge Catharine R. Aron after a ruling adverse to Ms. Broughton, claiming that Judge Aron, for example: (1) "assumed the position of ring master over an ongoing major felony white collar crime . . ."; (2) gave the appearance of "openly colluding with WFC entities" and "of a public official who has been offered a large reward in exchange for her making rulings favorable to the defendants . . ."; (3) libeled, defamed, and vilified Ms. Broughton; (4) committed constitutional violations; (5) was "either unaware of the controlling law or is deliberately violating law"; (6) "ravaged [Ms. Broughton"s] persona and reputation with abject falsehoods . . ."; and (7) "prejudged the Complaint in a manner that favors the defendants" (Base Case DE-352 at 2-3; Base Case DE-331 at 1-7; Adversary Proceeding DE-70 at 1; Base Case DE-373 at 4-5; *see also* Base Case DE-353 & DE-358); and

- moved to disqualify Judge Joseph N. Callaway, to whom the case was reassigned in May 13, 2016, based on Ms. Broughton's subjective belief that he would be biased against her. (Base Case DE-395 at 1.)

On May 20, 2016, the Honorable Terrence W. Boyle entered an Order withdrawing reference to the Bankruptcy Court, noting that "Ms. Broughton has asserted that every judge assigned to the case is disqualified from hearing her case, and she has appealed the orders denying recusal by at least one bankruptcy judge." (Adversary Proceeding Doc. No. 85 at 3-4.) Ms. Broughton's criticisms of the judiciary continued. For example, after Judge Boyle subsequently entered the November 3, 2016 Order dismissing all of Ms. Broughton's claims in the Adversary Proceeding, Ms. Broughton:

- moved to disqualify Judge Boyle, asserting that he: (1) "ha[d] not familiarized himself with the facts and law governing this case" or, alternatively, was "unable or unwilling to understand the law"; (2) failed to take actions Ms. Broughton deemed sufficient in light of her allegations that certain hearing "testimony" from Ms. Broughton was somehow "deleted from the official audio recording"; (3) attempted to "intimidate" and "vilify" Ms. Broughton, including through a "tyrannical threat"; and (4) "has proven that he has a personal prejudice in favor of the parties adverse to [Ms. Broughton]," including WFC (Adversary Proceeding DE-101 at 1-2, 4, 6-7; Base Case DE-426);

- moved to disqualify the Judge Reidinger shortly after the case was reassigned to him in July 2017,5 asserting that: (1) unidentified prior statements by Judge Reidinger "prove that he has prejudged this case," which somehow relates to him "condon[ing] the massive corruption of the Courts"; and (2) "[t]he records of this Court clearly and fully document that extraordinary defiling of the courts of the United States which Judge Reidinger condones" (Base Case DE-438); and

- again moved to disqualify Judge Reidinger in February 2019, this time stating that he: (1) "committed several serious felonies in his presiding in this case," which is proven by "clear and uncontested evidence"; (2) committed "dishonorable actions" and "outrageous felonies" that "constitute actionable obstruction of justice punishable by decades of his imprisonment," including the fabrication of a hearing transcript; (3) "collude[ed] with WFC to fulfill WFC's desire to confiscate [Ms. Broughton's] property"; and (4) participated in a criminal "RICO scheme initiated by WFC." (Base Case DE-596 at 1-6; Base Case DE-598 at 1-4.)

WFC is not a party or creditor in the ongoing Base Case. Rather, WFC's involvement in Ms. Broughton's bankruptcy proceedings ceased with the Court's dismissal of the Adversary Proceeding.

IV. **The Present Action**

The Broughtons' Complaint here alleges that certain actions occurring within the context of Ms. Broughton's Base Case—which culminated in the Bankruptcy Trustee taking possession of real property in Raleigh, North Carolina where the Broughtons had been living—were unconstitutional or unlawful. *(See generally* DE-1.) The Complaint focuses overwhelmingly on alleged actions by the Bankruptcy Trustee (who is not a party to this action) and Judge Reidinger, with the Broughtons alleging in cursory fashion that these actions were in furtherance of a scheme or conspiracy involving WFC. *(See id.)* In the place of specific allegations relating to WFC's supposed wrongdoing, the Broughtons expressly rely on Ms. Broughton's allegations and theories in the previously dismissed Adversary Proceeding, incorporating the Adversary Proceeding by reference and seeking "an order that WFC immediately pay [Ms. Broughton] the amount calculated in her adversary proceeding . . . ." (DE-1 at 1, 3 and ¶¶ 4, 68-69, 72-76.)

V. **North Carolina State Court Proceedings**

The federal court actions discussed above were preceded by significant litigation in the state courts in Wake County, North Carolina, which resulted in Gatekeeper Orders and significant monetary and other sanctions being entered against Ms. Broughton due to her repeated frivolous filings. Given the protracted history of the state court litigation, WFC will not endeavor in this proceeding to address all of the filings and circumstances leading up to the state courts entering Gatekeeper Orders and sanctions judgments against Ms. Broughton. However, these proceedings are addressed in greater detail in WFC's Memorandum in Support of its Motion to Dismiss the Complaint (DE-7 at 4-9), and certain state court Orders attached as Exhibits to WFC's Motion to Dismiss—in particular, Judge Rader's September 18, 2009 Gatekeeper Order (DE-6-4), Judge Kenneth C. Titus's March 31, 2010 Order adding conditions to the Gatekeeper Order (DE-6-2), and Judge Ned W. Mangum's September 11, 2012 Order adding further restrictions to that Order (DE-6-5)—together provide a relatively detailed summary of Ms. Broughton's sanctionable conduct in the state court litigation.

ECF No. 10, 3-10.

It appears that Plaintiffs' complaints have reiterated prior claims that had been decided adversely to Plaintiffs; that many complaints contain spurious allegations accusing members of

the judiciary of fraud, conspiracy, fabricating evidence, and other misconduct; that Plaintiffs have ignored prefiling injunctions filed in state court; and that Plaintiffs' actions have unduly burdened the court and litigants. Accordingly,

**PLAINTIFFS ARE HEREBY ORDERED TO SHOW CAUSE NO LATER THAN SEPTEMBER 13, 2019, WHY THEY SHOULD NOT BE SUBJECT TO AN INJUNCTION PROHIBITING THEM FROM FILING ANY NEW ACTION OR OTHER FILING IN THIS COURT RELATING TO ANY OF THE CLAIMS, THEORIES, OR CIRCUMSTANCES RELATING TO THEIR PREVIOUSLY DISMISSED STATE AND FEDERAL COURT ACTIONS UNLESS PLAINTIFFS HAVE OBTAINED PRIOR AUTHORIZATION FROM A UNITED STATES DISTRICT JUDGE WHO HAS DETERMINED THAT THE PROPOSED FILING COMPLIES WITH FED. R. CIV. P. 11 AND IS NOT BASED ON THE CLAIMS THEORIES, OR CIRCUMSTANCES UNDERLYING PRIOR STATE OR FEDERAL ACTIONS BROUGHT BY EITHER PLAINTIFF.**

**<u>PLAINTIFFS ARE CAUTIONED THAT THEIR FAILURE TO SHOW CAUSE BY SEPTEMBER 13, 2019, WILL SUBJECT THEM TO A PREFILING INJUNCTION AS SET FORTH HEREINABOVE</u>.**

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

August 13, 2019

Charleston, South Carolina